OPINION AND ORDER

FACTUAL ANT) PROCEDURAL BACKGROUND

In November of 1986, Bryan Gilbert, the decedent, passed away. In a will dated September 13, 1982, the decedent bequeathed his house to Juanita Lomayesva, the Appellant. The will was notarized before the County of Coconino and in the Hopi Tribal Court. Juanita Lomayesva is the decedent’s wife’s half-sister, whom he and his wife had raised. The will left other parts of the estate to the Humetewas brothel's, the Appellees. The Appellees are .the decedent’s wife’s nephews. The decedent and his wife also raised the Ap-pellees.
On April 1, 1988, the Governor' of the Upper Village of Moenkopi, LeRoy Shin-goitewa, sent a letter to the Humetewa brothers. In that letter, he stated that he had reviewed the will of Bryan Gilbert and had decided to find the document legitimate because of its recognition by the State of Arizona/County Of Coconino and the Hopi Tribal Court. He then ordered the Humetewas to turn the keys to the house over to the Appellant.
On April 21, 1988, the Governor sent a second letter to the Humetewas in response to their letter dated April 1, 1988. In the second letter, the Governor reiterated his reasons for' finding the will binding and informed the Appellees that they had the right to challenge the will in the Hopi Tribal Court.
In a letter dated October 7, 1988, the Appellees informed Governor Shingoitewa that they had retained counsel and stated their opinion that the tribal court lacked *344 jurisdiction in this matter. They requested that the Upper Village of Moencopi Board of Directors, as the body possessing competent jurisdiction, adjudicate the matter.
On September 7, 1989, Governor Shin-goitewa wrote to Judge Leslie waiving the village’s original jurisdiction under Article III, Section 2 of the Hopi Tribal Constitution. He did so because he felt that the court was in a better position to hear a “will contest” and distribute the estate.
On September 11, 1989, the Appellant filed a Petition for Probate of Estate with the tribal court. In the petition, she asked that the will be found valid, that the house be awarded to her, and that any parties presently in possession of the house be ordered to vacate the house immediately. A Notice of Publication was filed concurrently with the above petition.
On November 28, 1989, the Appellees filed an Objection to the Petition for Probate of Estate. In that objection, they claimed that the house had been the domicile of and continuously occupied by Harley Humetewa. They also challenged the jurisdiction of the court, asserting that the authority to determine the inheritance of property rests with the individual villages of the tribe. They also claimed that the Board of Directors of the Upper Village of Moencopi lacked the power to waive jurisdiction and that Governor Shingoitewa made his determination without delegation of authority from the Board of Directors, contrary to the Constitution of the Upper Village of Moencopi.
On 'September 20, 1993, the Tribal Court issued its Final Order holding that: (1) the village had proper1 original jurisdiction over the will, and (2) it had exercised that jurisdiction through the Governor’s order, and (3) that the Governor had found the will to be “legal and binding” and that he had awarded the house to the Appellant. In doing so, the tribal court certified the decision of the Governor. The judge’s final order carefully points out that the court is certifying the governor’s decision and that the Humetewas’ objection challenged the court’s authority to do so, rather than representing an appeal of the Governor’s decision to the Tribal Court.
On September 28, 1993, the Appellees filed a request with the Upper Village of Moencopi asking the Board to review the actions of the Governor, claiming that he acted without the participation of the Governing Board and that there were no records to support his action. They requested that the village reconsider and reverse the governor’s decision.
On November 2, 1993, the Governing Board invalidated the Governor’s decision waiving jurisdiction. After1 adjudicating the matter1, the Board unanimously awarded the house to the Appellees. In a letter dated January 13, 1994, the Governing Board informed the Tribal Court that the Board had retained jurisdiction over the matter in its November 2, 1993 meeting and had awarded the estate to the Appel-lees. It cited the following reasons for its decision: (1) the past governor unilaterally waived jurisdiction in violation of the ByLaws of Upper Village of Moencopi, (2) there was no recorded vote waiving jurisdiction by the Village Governing Board, (3) general Hopi custom requires that all property pass to the son, where there is no daughter, and (4) that the Gilberts are the parents of the Humetewas according to general Hopi customs. The letter requests that the court carry out the Board’s November 2, 1993 decision
In a letter dated February 14, 1994, the trial court judge enclosed a copy of the final order in response to the January 13, 1994 letter. In a letter1 dated May 10, 1994, the Board wrote a letter stating that *345 the village had not requested a decision by the court, but had asked the court to recognize the village’s decision to retain jurisdiction over the matter and assist the village in carrying out this decision. In a letter dated May 17, 1994, the trial court judge informed the village that his February 14th letter was meant to inform the village that a decision had already been reached by the trial court. The letter also states that because the court has issued a decision prior to the village’s decision that the village should retain an attorney to advise the village on how its later decision could be enforced when a prior court order has already been rendered.
On January 15, 1998, the Appellees filed a Motion to Modify the Final Order of September 20, 1993. The Motion argues that the Hopi Tribal Constitution reserves certain powers, such as inheritance and property determinations, to the individual villages and that the original jurisdiction remains with the village until the respective village has exercised its jurisdiction to decide that dispute. They also argue that the Upper Village of Moencopi, through its Board of Directors, asserted its jurisdiction in its November 2, 1993 decision to award the house to the Appellees and that Governor Shingoitewa’s unilateral act was an invalid waiver of village jurisdiction. They argue that the court should provide relief under Rule 30(b)(7) of the Hopi Rules of Civil Procedure.
On January 22, 1998, the Appellant filed a Notice of Intent to Respond. On March 16, 1998, the Appellant filed a Motion to Dismiss asserting that the Motion to Alter Judgment be denied under the basic principles of fair play and substantial justice.
The court set a hearing for September 17, 1998. Neither the Appellant nor her attorney attended that hearing. On September 22, 1998, the trial court issued a default judgment denying the Appellant’s Motion to Dismiss and granting the Appel-lees’ Motion to Alter Judgment. The court based its decision on the Appellant’s and the Appellant’s attorney’s failure to appear, construing that failure as abandonment of the Appellant’s claims.
In a handwritten letter dated September 23, 1998, the Appellant’s attorney informed the court of his intention to withdraw from the case and requested a continuance. In a handwritten letter dated September 24, 1998, the Appellant informed the court that her counsel had suffered an “extreme medical emergency” which had prevented her appearance at the September 17, 1998 hearing. On October 8, 1998, the court granted the Appellant’s attorney’s motion to withdraw, but denied a continuance based on the untimeliness of the motion.
In a handwritten letter dated October 11, 1998, the Appellant requested reconsideration of her Motion to Dismiss and a continuance based on her attorney’s health problems. The Trial Court chose to treat her letter as an appeal of the September 22, 1998 order and entered notice of appeal on October 26, 1998. This court stayed the Hopi Court’s order.

DISCUSSION

I. NOTICE OF APPEAL
Under Rule 37c, an appeal must be made within 20 days of the entry of judgment. Written notice of appeal specifying the parties to the appeal, the order or judgment appealed from, and a short statement of the grounds for appeal must be given.
Juanita Lomayesva’s appeal meets none of these standard. Her appeal came in the form of a handwritten letter prepared without the benefit of counsel, filed one day after the time period allotted for appeal.
*346 The court, however, has the power to excuse delay for “good cause.” In Hopi Tribe v. Gaseoma, the court permitted a late filing of seven days where “good cause” existed because the prosecuting attorney had resigned from her post and the Tribe needed additional time to employ substitute counsel and permit the counsel to become familiar with the case.
In this case, the Appellant’s attorney was suffering from extreme health problems and was incarcerated when the notice of appearance was delivered to his office. The Appellant learned of his condition only after a default judgment had been granted. In light of the circumstances, good cause exists to forgive a single day’s delinquency in the interests of justice.
The technical deficiencies of the Appellant’s appeal should also be viewed in light of her lack of counsel. The court could reasonably assume that the Appellant, bereft from the benefits of counsel, was not well versed in the legal and procedural mechanisms of the appeals process and her appeal would necessarily suffer as a result. Her letter can be viewed as a good faith attempt to fulfill the requirements of the court.
The trial judge construed her handwritten letter of October 11, 1998 as an appeal. He was correct in doing so under the Hopi customs of fairness. As outlined above, it is only fair to the Appellant to construe her letter as an appeal. There is only one thing that the Appellant could have been appealing and it is clear from the text that she was appealing the default judgment. In construing the letter as an appeal, the trial judge is giving the Appellant the minimal assistance that she would have already received from counsel, had his health allowed him to continue the case. The court has good cause to overlook such minor deficiencies in the interests of fail' adjudication
II. DEFAULT JUDGMENT
 The trial court granted a default judgment for the Appellees on September 22, 1998. In doing so, the judge erred. “A default judgment is a drastic remedy which should only be resorted to in extreme situations where there has been a clear record of willful misconduct.” In re Marriage of Myron, AP-006-94* (1995).
The default judgment is too drastic of a remedy in a case such as this that has been before the court for over 10 years. Both parties deserve the opportunity to be heard after their lengthy efforts to obtain justice. Furthermore, default judgment is a remedy resorted to in extreme situations where there is a clear record of willful misconduct. In this case, the situation was neither extreme nor was there any record or even any implication of misconduct. Default judgment should not have been granted on the Motion to Alter Judgment.
The trial judge made two separate decisions, one to deny the Appellant’s Motion to Dismiss and the second to grant the Motion to Alter Judgment. In the event of the Appellant’s failure to appear, the most that the trial judge should have done was deny the Appellant’s Motion to Dismiss and set a new schedule to hear the Motion to Alter Judgment.
After oral arguments, the court said that a transcript of the portion of the hearing in Hopi would be provided. That testimony is not relevant to this decision. The substance of that oral testimony was on the merits of the case. In deciding this case, the court does not reach the merits, but rather decides the case on procedural grounds.
III. CONCLUSION
The Motion to Alter Judgment raises a number of concerns that must be ad *347 dressed by a full hearing before the court. In handing down the September 20, 1993 order, the trial court was in essence certifying the decision of the Governor. The court, however, made no effort to determine whether the Governor had given both parties a fair opportunity to be heard prior to making his decision.
In granting a default judgment against the Appellant, the court created a situation where the tribe was responsible for turning a party out of her home without guaranteeing a fair opportunity to be heard. Where the consequences of a judgment are so dramatic, the court can only resort to a default judgment in the most egregious cases of misconduct.
The tribe cannot use its police arm unless there is an assurance of fairness. In light of this, the Court remands the case to trial court in order to hear the issues raised by the Appellee’s Motion to Alter Judgment.

ORDER OF THE COURT

This case is REMANDED to the trial court for deliberations consistent with this Opinion.